|  |  |  |
|---|---|---|
| MICKEY PUBIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-1809 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

In this action filed *pro se* against the Department of Justice, plaintiff alleges that DOJ's Office of Professional Responsibility ("OPR") improperly withheld records that he requested, in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Pending are Plaintiff's Motion for Summary Judgment [Dkt. # 16] and Defendant's Renewed Motion for Summary Judgment, which was filed in light of plaintiff's clarification of his FOIA request and OPR's subsequent search and release of responsive records. *See* Def.'s Mot. at 1 [Dkt. # 17]. Having considered the entire record, and for the reasons explained below, the Court will grant defendant's motion, deny plaintiff's motion, and enter judgment accordingly.

## BACKGROUND

As a result of an "investigation of a large-scale conspiracy to traffic cocaine" in the area of Fort Lauderdale, Florida, plaintiff and other individuals "were charged in a 32-count indictment for various drug crimes." *United States v. Pubien*, 349 Fed. App'x 473, 475 (11th Cir. 2009). A jury in the U.S. District Court for the Southern District of Florida convicted plaintiff, and he was

sentenced to "six concurrent terms of imprisonment for life." *Id*. at 476. AUSA Julia J. Vaglienti

was the prosecuting attorney.

In February 2016, plaintiff mailed a FOIA request to OPR captioned "Request for

Information on a Complaint Filed Against Assistant United States Attorney Julia J. Vaglienti as to

a Fraudulent Indictment," and seeking:

> [A]ny and all documents which relates to any investigation taken by this office. To be specific, my request is for: **(1) Any information pertaining to Assistant Attorney Julia J. Vaglienti's involvement with the fraudulent indictment. (2) Any information pertaining to any law enforcement officials involved with Ms. Vaglienti. (3) Any other individuals that may be part of this investigation. (4) All documents as to the proceedings for obtaining the indictment, if any exist, [attendance record of the grand jury, polling sheet, transcripts of the grand jury's return of a True Bill].**

Def.'s Ex. A, FOIA Request at 2 [Dkt. # 17-1] (bold type and bracket in original). Plaintiff

prefaced the request with a narrative in which he stated: "after about 33 months of this office

having possession of my complaint, I was sent a correspondence dated February 1, 2016, stating

that it was without jurisdiction to investigate the matter."[1] *Id*. at 1.

OPR interpreted plaintiff's request as seeking "investigative records relating to any . . .

investigations OPR may have conducted regarding AUSA Vaglienti in connection with a

fraudulent indictment or other law enforcement agents" and refused to either confirm or deny the

existence of responsive records. Def.'s Ex. B, Second Decl. of Ginae Barnett  4 [Dkt. # 17-2].

---

[1]     On four occasions between March 2013 and November 2015, OPR received a letter from plaintiff "complaining" about AUSA Vaglienti's "conduct in handling his criminal case." First Decl. of Ginae Barnett ¶ 4 and Ex. A [Dkt. # 13-2]. On February 1, 2016, OPR informed plaintiff that it would take no action on his complaints of "alleged misconduct in connection with the indictment in your case," stating: "It is . . . the policy of this Office to refrain from investigating issues or allegations that could have been or still may be addressed in the course of litigation, unless a court has made a specific finding of misconduct by a DOJ attorney or law enforcement agent." *Id*. ¶ 5 and Ex. B; Second Barnett Decl, Ex. A [Dkt. # 17-2, ECF p. 124].

Such action is commonly known as a *Glomar* response.[2] The Office of Information Policy, to which FOIA decisions by DOJ components are appealed, affirmed OPR's decision. First Decl. of Ginae Barnett Decl. ¶ 11 [Dkt. #13-2] .

Plaintiff filed this lawsuit in September 2016, and defendant filed its first summary judgment motion on November 13, 2016, based on OPR's *Glomar* response. Plaintiff filed his own summary judgment motion on January 3, 2017, asserting that OPR's declarant had "misconstrued" his FOIA request. Mot. at 2. Based on plaintiff's "clarification," OPR determined that plaintiff was "only seeking investigative records pertaining to an investigation of AUSA Vaglenti's [sic] conduct in response to Plaintiff's complaints to DOJ." Second Barnett Decl. ¶¶ 5-6. The declarant then conducted a search by plaintiff's name of "OPR's electronic Law Manager (LM) and Hummingbird DM (DM) databases," which she avers "are the only systems of records maintained by OPR likely to identify or contain [responsive] records[.]" *Id*. ¶ 6. The declarant located 126 pages and, on January 17, 2017, released all but two pages to plaintiff in their entirety. A few third-party names and a third-party's personal e-mail address were redacted from the remaining two pages under FOIA Exemption 6. *Id*. ¶ 12 and Ex. A. That same day, defendant withdrew its initial summary judgment motion and filed the pending renewed motion for summary judgment.

---

[2] A *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*., 473 F.3d 370, 374 (D.C. Cir. 2007). As stated in the initial declaration: "OPR provided a *Glomar* response . . . pursuant to FOIA Exemptions 6 and 7(C) because acknowledging the existence or nonexistence of records concerning Vaglienti would reveal whether OPR had ever initiated an investigation and recommended disciplinary action, constituting an unwarranted invasion of AUSA Vaglienti's privacy." First Barnett Decl. ¶ 19.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA action, the Court may award summary judgment solely on the information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.' " *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears " logical" or "plausible." *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citations omitted).

An inadequate search may constitute an improper withholding under the FOIA. *See Maydak v. U.S. Dep't. of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003). So, when an agency's search is questioned, the agency prevails on summary judgment if it shows that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

**ANALYSIS**

In his opposition to defendant's renewed motion, plaintiff contends that there "are material facts of misleading statements, and the inadequate search of records pertaining to AUSA Vaglienti's involvement in Plaintiff's fraudulent claim." Opp'n at 1 [Dkt. # 20]. He first argues, though, that defendant has acted in bad faith.

**1. Bad Faith**

According to plaintiff, defendant's initial declaration "was drafted in bad faith" because it supported OPR's *Glomar* response. Opp'n at 2; *see* First Barnett Decl. ¶ 8 ("By letter dated March 10, 2016 OPR Special Counsel . . . sent a *Glomar* response to Plaintiff's FOIA request, refusing . . . to confirm or deny the existence of records pertaining to a third party in the absence of the individual's consent, an official acknowledgment of an investigation, or an overriding public interest."). Plaintiff posits that had the declarant not omitted from her description of the request "the seven words, 'To be specific, my request if [sic] for' " she would not have wrongly interpreted the request as seeking "documents pertaining to any investigation taken by the OPR," which "activated a Glomar response." Opp'n at 2. But since the interpretation that led to the *Glomar* response occurred at the administrative level and months before the filing of this lawsuit, plaintiff's focus on the declarant's recounting of the administrative proceedings is misplaced. And, in any event, a "bare allegation [of bad faith] is insufficient to rebut the presumption of good faith accorded to [OPR's] affidavit." *Agolli v. Office of Inspector Gen., U.S. Dep't of Justice*, No. 15-5273, 2016 WL 6238495, at *1 (D.C. Cir. Sept. 22, 2016) (per curiam), citing *Safecard*, 926 F.2d at 120. Finally, OPR's decision to withdraw its defense of the *Glomar* response and to process

plaintiff's request during the course of this litigation cannot plausibly support a finding of bad faith; if anything, it evidences good faith.[3]

## 2. OPR's Search for Records

In his opposition, plaintiff admits: "Ms. Barnett's second declaration is adequate as to the search methods," Stmt of Undisputed Material Facts ¶ III [Dkt. # 20], and he acknowledges that he received his "complaint with exhibits attached, and multiple Memorandums of agencies responses to [his] complaints-and FOIA request." Opp'n at 4-5. Nevertheless, plaintiff contends that the individuals who performed the search "should've known" to search the "LM-DM" databases by AUSA Vaglienti's name." *Id*. at 4. He states that as a result of their failure to do so, "[n]one" of the 126 pages "that the defendants claimed were responsive records . . . consist[s] of an investigation undertaken by OPR concerning AUSA Vaglienti." *Id*. at 4-5. Defendant counters that plaintiff specifically requested records related to matters in which he was the complainant; therefore, a search by AUSA Vaglienti's name would have been "overly broad" because it would have identified "all investigations (if any exist) in which AUSA Vaglienti is the subject, regardless of who the complainant was." Reply at 4.

The record supports defendant's position. In his summary judgment motion, plaintiff asserted that OPR had "misconstrued his FOIA request as requesting [ ] information concerning <u>any</u> OPR investigation of AUSA Vaglienti, <u>not just one</u> conducted in response to Plaintiff's

---

[3]    OPR's initial interpretation of plaintiff's ambiguously worded request was consistent with its obligation "to construe a FOIA request liberally," *Nation Magazine, Washington Bureau v. U.S. Customs Serv*., 71 F.3d 885, 890 (D.C. Cir. 1995), citing 5 U.S.C. § 552(a)(3), and it was reasonable. *Cf. LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) ("The drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof. We think it improbable, however, that a person who wanted only the subset would draft a request that . . . first asks for the full set.").

complaints," Pl.'s Summ. J. Mot. at 2 (underlines in original), which prompted OPR to reinterpret the request. And upon reinterpreting the request as seeking only records in plaintiff's name, OPR had no duty under FOIA either to conduct a broader search in Vaglienti's name or to explain why it did not do so, as it had initially with its *Glomar* response. Therefore, the Court finds that no genuine factual dispute exists with regard to the search, and that defendant is entitled to judgment as a matter of law on the search question.

**3. OPR's Withholdings**

OIP redacted from two of the released pages, 1 and 114, the names of "non-attorney OPR employees" and a third-party's name and personal e-mail address. Second Barnett Decl. ¶ 12. It invoked FOIA Exemption 6 as the basis for the withholdings. Plaintiff does not address those minimal withholdings in his opposition to defendant's renewed motion for summary judgment. *See generally* Opp'n. Still, the Court must "state on the record" why defendant is entitled to judgment as a matter of law on its exemption claim. Fed. R. Civ. P. 56(a).

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It "covers not just files, but also bits of personal information, such as names and addresses, the release of which would create[ ] a palpable threat to privacy.' " *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), quoting *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006). "To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure would compromise a substantial, as opposed to a de minimis, privacy interest." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (citation and internal quotation marks omitted). If the answer is yes, "the court then must weigh that interest

against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Id*. The court must assess "the extent to which disclosure would serve the 'core purposes of the FOIA' by 'contribut[ing] significantly to public understanding of the operations or activities of the government.' " *Id*. at 33-34, quoting *United States Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994). For "unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue." *Id*. at 34 (citations and internal quotation marks omitted).

Where personal privacy is at stake, the burden is on the FOIA requester "to establish a sufficient reason for disclosure" by showing first "that the public interest sought to be advanced is a significant one" and second that "the [requested] information is likely to advance that interest." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Otherwise, the balancing requirement does not come "into play." *Id*. at 175. Although *Favish* involved FOIA Exemption 7(C), rather than Exemption 6, the Court of Appeals "has deemed the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

OPR's declarant states that the responsive records satisfy the threshold personnel requirement of Exemption 6 because they "pertain to allegations of work-related misconduct by Department employees, . . . which allows OPR to protect the personal privacy of third parties." Second Barnett Decl. ¶ 13. The declarant then "weighed the privacy interests of the [named] individuals . . . against the public interest in disclosure of their names and other identifying information" and concluded that the individuals "have strong privacy interests in not being associated with allegations of misconduct and [that] identifying them would not shed light on the

agency's performance of its statutory duties." *Id*. ¶ 14. Plaintiff has asserted no public interest to

weigh against the asserted privacy interests, and "something, even a modest privacy interest,

outweighs nothing every time." [4] *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873,

879 (D.C. Cir. 1989). Therefore, the Court will grant summary judgment to defendant on OPR's

redactions made pursuant to Exemption 6. *See Prison Legal News*, 787 F.3d at 1148 n.6 ("covering

individuals' names and other personal identifying information—fall within the scope of exemption

6").

## CONCLUSION

The Court concludes that defendant has satisfied its disclosure obligations under FOIA by

conducting an adequate search and releasing all non-exempt information and that plaintiff has

produced no contradictory evidence. Consequently, defendant's motion will be granted and

---

[4]     In his summary judgment motion filed before defendant's invocation of Exemption 6, plaintiff advanced a public interest argument in support of his FOIA request in general. Mot. at 7-8. He proffered a notarized letter of an expert document examiner who states that she is willing to testify that one of two date stamps appearing on documents filed in the Southern District of Florida "has been altered." Pl.'s Ex. 1 [Dkt. # 16]. Plaintiff has not renewed that argument in his opposition to defendant's renewed summary judgment motion. Even if he had, plaintiff has not explained how that letter could plausibly "warrant a belief by a reasonable person" that OPR engaged in improprieties surrounding court filings, given its mandate. *See* Second Barnett Decl. ¶ 3 ("OPR has jurisdiction to investigate allegations of attorney misconduct involving DOJ attorneys" and related "allegations of misconduct by law enforcement personnel," and to report the results and any disciplinary or corrective recommendations to "the responsible DOJ official[.]"). And "the public interest is 'insubstantial' unless the requester puts forward 'compelling evidence that the agency denying the FOIA request is engaged in illegal activity' and shows that the information sought 'is necessary in order to confirm or refute that evidence.' " *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992), quoting *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991). Furthermore, nothing about those circumstances would outweigh the privacy concerns behind the limited redactions here.

plaintiff's motion questioning defendant's initial *Glomar* response will be denied as moot.  A

separate order will issue.



AMY BERMAN JACKSON
United States District Judge

DATE:    August 29, 2017